UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARLON G. BERNARDEZ RIVAS,<br><br>Plaintiff,<br><br>- against -<br><br>FRANK BISIGNANO, *Commissioner of Social Security*,<br><br>Defendant. | 25-CV-6280 (RWL)<br><br>**DECISION & ORDER: SOCIAL SECURITY** |

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On July 30, 2025, Plaintiff Marlon G. Bernardez Rivas ("Rivas"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Rivas seeks review of the Commissioner's decision that Rivas was not disabled and therefore not entitled to Social Security Disability benefits under Title II of the Act for the closed period between August 14, 2021, and February 12, 2023. Rivas has moved for judgment on the pleadings seeking reversal of the Commissioner's final decision, or, in the alternative, remand. The Commissioner seeks affirmance of its decision. For the reasons explained below, Rivas's motion is GRANTED and the case shall be REMANDED.

## LEGAL STANDARD

### A. Standard Of Review

A district court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. 42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order). The two-step inquiry involves deciding "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on rehearing in part*, 416 F.3d 101 (2d Cir. 2005); *accord Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)) (remanding for noncompliance with regulations). Courts review de novo whether the Administrative Law Judge ("ALJ") applied the correct legal principles and made legal conclusions based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the [Act]").

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the

Commissioner's decision." *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would ***have to conclude otherwise***." *Brault*, 683 F.3d at 448 (cleaned up); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in … [the] case record." 42 U.S.C. § 423(d)(5)(B). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010), the ALJ may not ignore or mischaracterize evidence of an alleged disability. *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60,

62 (2d Cir. 1982). The court affords the Commissioner's determination considerable deference and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991); *Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *7 (S.D.N.Y. Jan. 5, 2015) (same), *adopted sub nom*. *Dunston v. Commissioner of Social Security*, 2015 WL 1514837 (S.D.N.Y. Apr. 2, 2015). Accordingly, if the court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). But the court "will not defer to the Commissioner's determination if it is the product of legal error." *Dunston*, 2015 WL 54169, at *4 (cleaned up) (collecting cases).

### B. Legal Principles Applicable To The Determination Of Disability

Under the Act, a person meeting certain requirements and having a disability is entitled to disability benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to benefits, the Commissioner conducts a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1).

First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If the claimant does not have an impairment or a combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments are, or medically equal, one of the impairments included in the "Listings of Impairments" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of the Listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

If the claimant is not presumed disabled at step three, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (f), (h). If so, the claimant is not eligible for benefits and the inquiry ends.

If the claimant is incapable of performing past relevant work, the Commissioner continues to step five to determine whether the claimant is capable of performing other available work. 20 C.F.R. § 404.1520(a)(4)(v), (g), (h). If the claimant, as limited by his RFC, can perform other available work, the claimant is not entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proof at steps one through four. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). Once the claimant has established that he is unable to perform past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

## BACKGROUND

### A. Rivas's Claim

Rivas is a native Spanish-speaker who was born in 1971. (R. 90, 349, 351.[1]) He has a high school education and job experience as a butcher and as a laborer doing maintenance at construction sites. (*See, e.g.*, R. 99, 351, 369.)

On May 2, 2022, Rivas filed an application for social security disability benefits, alleging pain in the waist and both knees that began on August 14, 2021, when Rivas was 49 years old. (R. 15, 91, 103, 440, 446, 455.) Rivas was injured in a work-related accident on August 12, 2021 (R. 463) and unable to work as of August 15, 2021, due to his alleged disabling conditions. (R. 350.) Rivas also submitted medical records, described below. The Commissioner denied Rivas's application on August 12, 2022, and again upon reconsideration on February 2, 2023. (R. 90-101, 103-108.)

[1] "R." refers to the certified administrative record at Dkt. 9.

On February 13, 2023, Rivas filed a request for a hearing before an ALJ. (R. 140-141.) On January 18, 2024, Rivas, represented by counsel and with the assistance of an interpreter, appeared and testified at a hearing held before ALJ John Carlton. (R. 60-89.) There, Rivas reported that he had returned to work and sought to amend his case to a closed period ending on the day he returned to work, February 12, 2023. (R. 64-65.) A vocational expert ("VE") also testified. (R. 78-83.)

Interpretation and miscommunication issues persisted throughout the January 2024 hearing. (*See, e.g.*, R. 70-72 (Rivas's attorney interrupting to say she did not "think the interpreter is translating correctly"); R. 74-75 (interpreter posing incorrect questions to Rivas, according to Rivas's attorney).) At the end of the hearing, the ALJ asked Rivas's attorney, a fluent Spanish speaker, whether she believed the hearing had been correctly interpreted. (R. 84-85.) Rivas's attorney reported that the interpreter did not correctly communicate some of the questions that were posed to Rivas and also "did miss out on a couple things [Rivas] did say" when interpreting his responses. (R. 85-86.) The ALJ stated that he "recall[ed] a couple times in the hearing where [he] suspected" as much. (R. 86.) When asked by the ALJ whether she believed it was a fair hearing, the attorney responded "[n]o, I think we should have another hearing." (R. 87.) The ALJ then stated that there was "[n]o question [Rivas] is entitled to a full and fair hearing, and that includes his answer being fully translated and put onto the record." (R. 87.) Accordingly, another hearing was held on May 21, 2024, at which time both Rivas, represented by counsel, and the VE testified again. (R. 35-59.) Nobody expressed any concerns related to interpretation at the second hearing.

The ALJ denied Rivas's application by written decision dated September 27, 2024. (R. 9-29.)

### B. Summary Of Relevant Medical Evidence

Three days after his accident, Rivas visited the St. Barnabas Hospital emergency room. (R. 651.) There are no medical records from that visit in the record. According to Rivas, the ER doctors performed MRIs of his lumbar spine and knees and requested electromyography testing, and he was discharged with pain medication. (R. 651, 732.) After the alleged onset of disability, Rivas regularly visited Multi-Specialty Pain Management, where he was seen by Drs. Brian Haftel, Farhana Ahmed, and Jared Rosenberg, whose medical records are described below. Drs. Jeffrey Yormak and John Xethalis examined Rivas and provided medical opinions for worker's compensation purposes. State agency reviewers Drs. A. Saeed and K. Gallagher reviewed Rivas's medical records and issued their own medical opinions.

#### 1. Medical Records

Rivas visited Dr. Brian Haftel at Multi-Specialty Pain Management on October 6, 2021. (R. 463-465.) Rivas reported hurting both his knees and his lower back in a work-related accident. (R. 463.) He noted having trouble sitting and sleeping and avoiding certain activities of daily living due to pain. (R. 463-464.) Examination of Rivas's back revealed diminished range of motion, a positive straight leg raise,[2] tenderness, and spasm. (R. 464.) Examination of Rivas's knees revealed diminished range of motion,

[2] "The straight leg raise test checks the mechanical movement of the neurological tissues as well as their sensitivity to mechanical stress or compression." *McIntosh v. Berryhill*, No. 17-CV-5403, 2018 WL 4376417, at *3 n.9 (S.D.N.Y. July 16, 2018) (cleaned up), *adopted*, 2018 WL 4374001 (S.D.N.Y. Sept. 12, 2018).

and pain and tenderness with palpation, though the joints were stable. (R. 464.) Rivas's gait was normal, but he "had difficulty standing from a sitting position and climbing on and off the examination table." (R. 464.) Dr. Haftel's impression was that Rivas suffered from strain and sprain to the lumbar area of the back and both knees. (R. 465.) Dr. Haftel recommended magnetic resonance imaging ("MRI"), physical and chiropractic therapy, and avoiding strenuous activity and heavy lifting. (R. 465.)

MRIs were taken on October 21 and 22, 2021. (R. 489, 492.) Imaging of Rivas's lumbar spine revealed a herniation impinging on nerve roots. (R. 492.) Imaging of Rivas's right knee uncovered a linear tear of the medial meniscus, a partial tear of the lateral collateral ligament, and joint effusion. (R. 489-490.) Rivas's left knee showed tears in the medial meniscus and medial patellar retinaculum, plus joint effusion. (R. 491.)

Rivas returned to Multi-Specialty Pain Management on November 4, 2021, and was seen by Dr. Farhana Ahmed. (R. 466-469.) Rivas again reported pain in his lower back and knees, poor sleep and difficulty sitting due to pain, and that he avoided exacerbating activities "due to the fear of hurting [himself] further." (R. 466-467.) Dr. Ahmed's examination revealed normal gait but difficulty maneuvering on and off the examination table, diminished range of motion in the lumbar area and both knees, positive straight leg raise, and tenderness in the lumbar area and both knees. (R. 467.) Dr. Ahmed's impressions included strain and sprain to the lumbar area of the back and bilateral knees, as well as lumbar radiculopathy,[3] and she recommended avoiding strenuous activity. (R. 468-469.)

[3] Lumbar radiculopathy "describes a pain syndrome caused by compression or irritation of nerve roots in the lower back." *Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021

Rivas saw Dr. Jared Rosenberg at Multi-Specialty Pain Management on December 2, 2021, December 30, 2021, and January 27, 2022. (R. 470, 476, 480.) At each appointment, Rivas reported that pain, difficulty sitting, and poor sleep continued. (R. 471, 477, 481.) Each examination had substantially similar outcomes to those prior: diminished range of lumbar area and knee motion, positive straight leg raise, and tenderness in the lower back and knees. (R. 471, 477, 481.) Rivas's gait was noted as antalgic[4] at each exam. (R. 471, 477, 481.) Dr. Rosenberg's impressions were strain and sprain to the back and knees, plus lumbar radiculopathy, and he recommended that Rivas avoid strenuous activity. (R. 472, 478, 482.) Dr. Rosenberg also administered steroid injections to the left and right knee on December 2 and 30, respectively. (R. 474-475.)

**2. Medical Opinions**

**a. Dr. Yormak**

On June 20, 2022, Rivas saw Dr. Jeffrey H. Yormak for a workers' compensation evaluation. (R. 650.) Rivas reported that his back pain had neither improved nor worsened since the date of injury, but that both of his knees had worsened. (R. 652.) He experienced "constant discomfort that makes it difficult to shop and bend." (R. 651.) Accordingly, his activity level had not returned to normal since the accident. (R. 651.) Rivas reported being able to lift 15 pounds, walk 25 minutes, sit for 45 minutes, and stand for 20 minutes. (R. 651, 696.)

---

WL 319354, at *11 n.7 (S.D.N.Y. Jan. 29, 2021), *adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

[4] Antalgic gait "means that Plaintiff demonstrated an abnormal walking pattern due to pain." *Vellone*, 2021 WL 319354, at *9.

Dr. Yormak reported that Rivas's gait was normal without assistive devices, and that Rivas could step up and down from steps with each leg independently. (R. 652-653.) Dr. Yormak noted some diminished range of motion in the flexion, extension, and lateral bending of Rivas's back. (R. 653.) Unlike before, Rivas's straight leg test was negative. (R. 653.) With respect to Rivas's knees, Dr. Yormak identified tenderness, diminished range of motion, and positive McMurray tests.[5] (R. 654.) Stability tests, motor strength, and sensation tests appeared normal. (R. 654.) Dr. Yormak diagnosed Rivas with sprain of the lumbar region and both knees. (R. 654-655.) He noted that Rivas's injuries were "resolving" but "ha[d] not achieved maximum medical improvement." (R. 654-655.)

Dr. Yormak opined that Rivas had a temporary, mild (25%) disability and could perform full-time light work with the following restrictions: "No lifting greater than 20 pounds, no climbing, crawling, squatting, or kneeling. No sitting, standing, walking greater than 60 minutes without a 2- to 3-minute rest period to change positions." (R. 655.)

**b. Dr. Xethalis**

Rivas saw Dr. John L. Xethalis on July 22, 2022, for another workers' compensation exam. (R. 726.) Rivas reported that physical therapy had "been helpful and provided sustained progressive improvement," but that he had not attended treatment since mid-May 2022. (R. 733, 757.) He stated that he could walk for one block, stand for 20 minutes, and sit for 10 minutes before having to change positions. (R. 733.)

---

[5] "McMurray's test is used to determine the presence of a meniscal tear within the knee." *Cautillo v. Berryhill*, No. 17-CV-1356, 2018 WL 1305717, at *9 n.24 (S.D.N.Y. Mar. 12, 2018).

Dr. Xethalis reported that Rivas's gait was normal without assistive devices. (R. 734.) Dr. Xethalis's examination of Rivas's lumbar spine revealed no muscle spasm, mild tenderness, positive straight leg raise, and diminished range of motion with flexion, extension, and bilateral bending. (R. 735.) Dr. Xethalis found no muscle atrophy, no deficits in muscle strength, normal sensation, and negative Lasegue tests.[6] (R. 735.) Dr. Xethalis's examination found diminished range of motion in both knees, but otherwise revealed no effusion, tenderness, or stability issues. (R. 735-736.) Dr. Xethalis diagnosed sprain and strain to the lumbar spine and both knees. (R. 736.)

Dr. Xethalis found that Rivas's condition had "not reached maximum medical improvement" and found "evidence of a mild partial disability of 25%." (R. 736.) He opined that Rivas was "able to work with limitations placed on: frequent kneeling and squatting, bending, twisting and lifting weight greater than 40 lbs." (R. 736.) Dr. Xethalis found that Rivas could "perform activity from 1/3 to 2/3 of the 8 hour[] work day." (R. 736.)

**c. State Agency Reviewers**

On August 11, 2022, the initial state agency reviewer, Dr. A. Saeed, reviewed the above medical evidence. (R. 90-101.) Dr. Saeed determined that no consultative exam was required (R. 93), and opined to the following: Rivas could frequently lift ten pounds; could occasionally lift 20 pounds; could stand, walk, or sit with normal breaks for six hours in an eight-hour workday; and could occasionally perform postural activities. (R. 96-97.) On reconsideration, signed January 31, 2023, Dr. K. Gallagher affirmed the same limitations. (R. 105-106, 108.)

---

[6] "The Lasegue Test is a type of Straight Leg Raise test that includes ankle dorsiflexion." *McIntosh*, 2018 WL 4376417, at *5 n.12.

### C. Hearing Testimony

#### 1. Rivas's Testimony

At the May 21, 2024 hearing, Rivas testified that at the time of the accident, he was employed doing maintenance at construction sites. (R. 46-47.) In that role, he cleaned construction areas and had to lift up to 20-30 pounds. (R. 47.) Prior to that, he was employed as a butcher. (R. 42.)

Rivas testified that he stopped working for a period of time after the August 2021 accident due to pain. (R. 48.) The pain made certain personal matters difficult, and he could only do household chores "[w]ith a lot of difficulty." (R. 48.) A typical day consisted mostly of sitting and resting. (R. 49.) Despite his pain, Rivas did not use assistive devices because he lived on the first floor and would "walk slowly when [he] had strong pain." (R. 49.) When he did use stairs, he had difficulty and would "go up or down slowly, being careful." (R. 49.) During the time he was out of work, he could sit for 30-45 minutes before needing to stand up, which he could do for 10-20 minutes before needing to lay down. (R. 49-50.) When he needed to kneel, crouch, bend, or stoop, he exercised "a lot of precaution due to the pain [he] was having all the time." (R. 50.)

Eventually, Rivas went back to work because he "had to generate some income [to] pay rent." (R. 50.) The ALJ asked whether something changed in Rivas's medical treatment that allowed him to go back to work, and Rivas reported that his treatment had not changed. (R. 50.) Rivas confirmed that he took the same pain medication he had been taking to manage discomfort since the accident. (R. 50-51.)

As of the day of the hearing, Rivas testified that he was working as a butcher at a meat distributor. (R. 41-42.) In that position, he was responsible for cutting and cleaning boneless meat that weighed between five and ten pounds. (R. 43, 45.)

**2. Vocational Expert's Testimony**

In response to a hypothetical question posed by the ALJ, VE Yaakov Taitz identified jobs that existed in the national economy for an individual of Rivas's age, education, and vocational background who was limited to work at light exertional levels; could not work on ladders, ropes or scaffolds; could occasionally use ramps and stairs; could occasionally balance, stoop, crouch, crawl, or kneel; could not operate foot pedals bilaterally; and could not work at unprotected heights, work around dangerous machinery, or operate a motor vehicle as part of employment. (R. 54-55.) VE Taitz identified the following jobs: price marker (light; 165,000 jobs in the national economy), routing clerk (light; 123,000 jobs in the national economy), and storage facility rental clerk (light; 58,000 jobs in the national economy). (R. 55.) He testified that full-time employees (working eight-hour days, five days a week, with 30-minute meal breaks and two 15-minute breaks) are expected to be 90% on task and absent no more than one day per month. (R. 56.)

When asked whether jobs existed in the national economy for the same hypothetical individual who was limited to sedentary work, VE Taitz testified that no good match existed for that individual. (R. 55-56.)

**D. The ALJ's Decision**

Following the five-step sequential evaluation process set forth in the Social Security regulations, the ALJ first determined that Rivas had engaged in substantial gainful activity as of February 12, 2023, but that Rivas had not engaged in substantial

gainful activity between August 14, 2021 and February 12, 2023. (R. 17-18.) At step two, the ALJ found that Rivas suffered from two severe impairments: lumbar dysfunction and bilateral knee dysfunction.[7] (R. 18.) At step three, the ALJ determined that Rivas did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19.) The ALJ specifically considered listings 1.15 (disorder(s) of the skeletal spine resulting in compromise of the nerve root(s)) and 1.18 (abnormality of a major extremity joint(s) in any extremity), which require a documented medical need for a one-handed or bilateral assistive device. (R. 18-19.) The ALJ found these listings inapplicable because there was no record of Rivas using an assistive device. (R. 19.)

The ALJ then assessed Rivas's RFC and determined that he could perform light work,[8] except that he could not climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally balance, stoop, crouch, or crawl; could not perform work requiring the operation of foot pedals with bilateral lower extremities; could not work at unprotected heights or around dangerous machinery; and could not be

[7] The ALJ acknowledged some medical history reflecting nodules in the lungs but concluded this condition was non-severe insofar as there was no follow-up treatment or imaging and the treatment notes did not show functional limitations. (R. 18.) The ALJ also noted wrist pain but found it non-severe given there were no treatment modalities or functional limitations listed in Rivas's medical history. (R. 18.)

[8] As defined by 20 C.F.R. § 404.1567(b), "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, [the Administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

required to operate a motor vehicle as a condition of his employment. (R. 19.) In determining Rivas's RFC, the ALJ conducted "careful consideration of the entire record." (R. 19.)

The ALJ first considered Rivas's testimony of his subjective symptoms, including his difficulty performing activities of daily living, climbing stairs, bending, stooping, sitting, and standing. (R. 19.) The ALJ determined that Rivas's medically determinable impairments could reasonably be expected to cause these symptoms, but that Rivas's statements about the symptoms' intensity, persistence, and limiting effects were inconsistent with Rivas's own testimony and the medical record. (R. 19-20.) More specifically, the ALJ found Rivas's subjective symptom testimony inconsistent with his hearing testimony that he "was able to return to work in February 2023 with no medical improvement." (R. 20.) The ALJ noted that Rivas's subjective symptom testimony was also inconsistent with "some examinations show[ing] only mild physical findings that would not support a finding of disability," without citing any specific portions of the medical records. (R. 20.)

The ALJ also evaluated the persuasiveness of each of the four medical opinions in the record. He found the opinions of state agency reviewers Drs. Saeed and Gallagher persuasive. (R. 21.) The ALJ summarized their shared opinion that Rivas could occasionally lift 20 pounds; frequently lift 10 pounds; sit, stand, or walk 6 hours per day; and occasionally perform postural activities. (R. 21.) The ALJ explained that these opinions were supported by the doctors' reviews of the broader medical record and were "consistent with treatment notes that show diminished range of motion, positive straight leg raise tests, and pain and tenderness in the claimant's back and bilateral knees,"

specifically citing the MRI reports and portions of the examinations of Drs. Haftel, Rosenberg, Yormak, and Xethalis. (R. 21.)

The ALJ found the opinion of Dr. Yormak partially persuasive. He summarized Dr. Yormak's opinion that Rivas could not lift greater than 20 pounds; could not climb, crawl, squat, or kneel; and could not sit, stand, or walk for more than an hour without a 2-3 minute rest period to change positions. (R. 21.) The ALJ determined that the opinion was supported by Dr. Yormak's examination of Rivas and that the portion of the opinion limiting Rivas to lifting no more than 20 pounds was consistent with other record evidence showing Rivas's diminished range of motion, positive straight leg raise tests, and pain and tenderness in the back and knees. (R. 21.) However, the ALJ found that the portion of Dr. Yormak's opinion precluding Rivas from performing postural activities and limiting him to sitting, standing, or walking for less than 60 minutes was inconsistent with examination findings showing only mild limitations in range of motion and with Dr. Xethalis's exam, which found that Rivas had negative Lasegue's tests, no deficit in muscle strength or muscle atrophy, no problems with reflexes or sensation, and no need for assistive devices. (R. 21-22.)

Like Dr. Yormak's opinion, the ALJ found Dr. Xethalis's opinion partially persuasive. But whereas the ALJ found Dr. Yormak's opinion ***overly*** restrictive, the ALJ found Dr. Xethalis's opinion – that Rivas could lift more than 40 pounds and frequently kneel, squat, bend, and twist – ***insufficiently*** restrictive. (R. 22.) The ALJ determined that the opinion was supported by Dr. Xethalis's examination but that Dr. Xethalis's opinion as to Rivas's exertional and postural abilities was overstated and inconsistent with other examination findings showing diminished range of motion, positive straight leg

raise tests, and pain and tenderness in the back and knees, with citation to the MRI images and examinations of Drs. Haftel, Rosenberg, and Yormak. (R. 22.)

At step four, the ALJ found that Rivas was unable to perform any of his past relevant work, crediting the VE's testimony. (R. 22.) At step five, again relying on the VE's testimony, the ALJ determined that jobs existed in significant numbers in the national economy that Rivas could perform, including marker, routing clerk, and storage facility rental clerk. (R. 23.) The ALJ thus concluded that Rivas was not disabled under the Social Security Act from August 14, 2021 through the date of the decision. (R. 23-24.)

**E. Subsequent Proceedings**

On October 10, 2024, Rivas requested that the Appeals Council review the ALJ's decision. (R. 5.) The Appeals Council denied review on June 2, 2025. (R. 1.) Rivas then filed the instant action on July 30, 2025. (Dkt. 1.) On February 9, 2026, Rivas moved for judgment on the pleadings contesting the Commissioner's decision. (Dkt. 14 ("Pl. Mem.").) The Commissioner filed their opposition brief on May 11, 2026, seeking affirmance of the administrative decision. (Dkt. 19 ("Def. Mem.").) Rivas filed a reply on May 26, 2026. (Dkt. 20 ("Reply").) On September 18, 2025, the parties consented to my jurisdiction for all purposes. (Dkt. 8.) The case is now ripe for decision.

## DISCUSSION

Rivas argues that the ALJ committed two errors requiring reversal, or, in the alternative, remand. First, Rivas contends that the ALJ failed to properly evaluate the medical source opinion evidence. (Pl. Mem. at 6-12.) Second, Rivas argues that the ALJ failed to properly evaluate Plaintiff's subjective symptom testimony. (*Id.* at 12-16.) According to Plaintiff, these errors resulted in an RFC that was not based on substantial

evidence. The Commissioner counters that the ALJ properly evaluated both the medical opinions and Rivas's subjective symptom testimony, and that substantial evidence supports the ALJ's decision. (Def. Mem. at 6-12.) As discussed below, the Court finds that while the ALJ's evaluation of the medical source opinions was proper, the ALJ's evaluation of Rivas's subjective symptoms was improper, and thus remand is required to afford the ALJ an opportunity to remedy that error.

**A. The ALJ Properly Evaluated The Medical Opinions Of Record**

"ALJs must consider medical opinion evidence of record." *Balotti v. Commissioner of Social Security*, 605 F. Supp.3d 610, 615 (S.D.N.Y. 2022). All medical opinions must be assessed for persuasiveness, with no presumption that one opinion carries more weight than another. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

In assessing persuasiveness, an ALJ must consider the opinion's supportability and consistency, among various other factors. 20 C.F.R. § 404.1520c(b), (c)(1-2). "Supportability refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations." *Balotti*, 605 F. Supp.3d at 616. The supportability analysis is "confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Vellone*, 2021 WL 319354, at *6. Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

An ALJ must not only consider supportability and consistency in evaluating medical source opinions, but also must explain how they analyzed those two factors. *See* 20 C.F.R. § 404.1520c(b)(2); *Vellone*, 2021 WL 319354, at *6 ("an ALJ ***must*** explain his/her approach with respect to the first two factors when considering a medical opinion"); *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (summary order) ("the ALJ was … obliged to … explain how the two 'most important' factors – supportability and consistency – applied to each opinion"). As noted in the Administration's 2017 revisions to the rules, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the path of an adjudicator's reasoning." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5858 (Jan. 18, 2017). An ALJ's failure to properly consider and apply the requisite factors is grounds for remand. *See, e.g.*, *Ballantyne T. v. Commissioner of Social Security*, No. 23-CV-11182, 2025 WL 551820, at *11 (S.D.N.Y. Feb. 19, 2025) (remanding due to ALJ's failure to "explain his analysis of the supportability and consistency factors"); *Rivera v. Commissioner of the Social Security Administration*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"), *adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Rivas's challenge to the ALJ's evaluation of the medical source opinions focuses almost entirely on the ALJ's evaluation of the opinions of Drs. Yormak and Xethalis. Rivas argues that the ALJ incorrectly "used Dr. Yormak's examination to reject Dr. Xethalis's opinion and Dr. Xethalis' examination to reject Dr. Yormak's opinion despite the

similarities in the examination findings between the two doctors." (Pl. Mem. at 9-10.) According to Rivas, the ALJ's finding that each doctor's opinion was supported by his own examination but inconsistent with the other's resulted in an "internally inconsistent" decision "lack[ing] any internal logic." (*Id.*) At bottom, Rivas objects to the ALJ's rejection of Dr. Yormak's more restrictive opinion "without sufficient, logical explanation." (*Id.* at 11.) The Commissioner responds that the ALJ reasonably evaluated each medical opinion based on its internal supportability and consistency with the record, and it was not error for the ALJ to find Dr. Xethalis's opinion "not sufficiently restrictive," Dr. Yormak's opinion "too restrictive," and "neither opinion … fully consistent with the record evidence." (Def. Mem. at 7-8.)

The Court begins its analysis with supportability. In isolation, the ALJ's statement that each doctor's opinion was supported by their respective examination findings was improperly conclusory. In finding the opinions of Drs. Yormak and Xethalis partially persuasive, the ALJ stated merely that each opinion was "supported by the [opining] doctor's examination of [Rivas]." (R. 21-22.) The supportability requirement, however, demands that the ALJ discuss the opining doctor's explanation for his opinion "and what [the doctor] considered in arriving at his opinion." *Balotti*, 605 F. Supp.3d at 618. In short, a conclusory explanation is not a sufficient explanation. *See, e.g.*, *Ayala v. Kijakazi*, 620 F. Supp.3d 6, 31 (S.D.N.Y. 2022) (conclusory explanation that a doctor's "'opinion is supported by examination' …. [is] insufficient to withstand review"); *Prieto v. Commissioner of Social Security*, No. 20-CV-3941, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) (conclusory explanation that opinion was "supported by the medical evidence of record and by [the doctor's] underlying examination" was insufficient to

adequately explain supportability); *Rivera*, 2020 WL 8167136, at *16 (conclusory explanation that opinion was "supported by the clinical examination findings, as well as the conservative care prescribed" was insufficient).

On their face, Dr. Yormak's and Dr. Xethalis's opinions could lead one to reasonably question their supportability. Dr. Yormak's examination findings suggest a relatively mild condition: Rivas's gait, sensation, and strength were normal; his straight leg test was negative; and while he had diminished range of motion, the diminishments were slight. (R. 653-654 (finding, for example, a diminishment of 10 degrees in Rivas's range of flexion).) But Dr. Yormak's ultimate opinion was quite restrictive in light of this examination. (*See* R. 655 (recommending no lifting more than 20 pounds, no postural activities, no walking more than 60 minutes without rest periods).) The opposite was true of Dr. Xethalis's examination and opinion. That examination showed a positive straight leg test and a range of motion that was more limited than it had been at Dr. Yormak's examination. (R. 735 (finding, for example, a 40-degree diminishment in Rivas's range of flexion).) Yet Dr. Xethalis opined to fairly mild limitations. (R. 736 (recommending no lifting more than 40 pounds, frequent postural activities okay).) In other words, Dr. Yormak found less severe objective findings but assessed more restrictive limitations, while Dr. Xethalis found more severe objective findings but assessed less restrictive limitations. The point is not that Dr. Yormak's and Dr. Xethalis's opinions are inconsistent with each other, but rather that logic suggests that one or both opinions may not be adequately supported by the underlying examination, at least in part.

Review of the entirety of the ALJ's opinion, however, reveals that the ALJ accounted for this very concern. Specifically, the ALJ addressed it in his consistency

analysis by finding only portions of each doctor's opinions persuasive, and rejecting the portions that were not adequately supported or consistent. In determining whether a medical opinion is consistent with the record evidence, "[a]n ALJ should not consider … each medical opinion in a vacuum, but must adequately account for the consistency of the various opinions with each other." *Simpson v. Commissioner of Social Security*, No. 22-CV-10606, 2024 WL 1300443, at *10 (S.D.N.Y. Mar. 26, 2024) (cleaned up), *aff'd*, No. 24-1104, 2025 WL 1156973 (2d Cir. Apr. 21, 2025); *Ingrid T.G. v. Commissioner of Social Security*, No. 20-CV-5651, 2022 WL 683034, at *8 (S.D.N.Y. Mar. 8, 2022) ("The ALJ's analysis is also undermined by her consideration of each medical opinion in isolation"); *Arlene P. v. Kijakazi*, No. 21-CV-895, 2022 WL 16734548, at *4 (D. Conn. Sept. 7, 2022) (remanding where "[t]he ALJ does not mention how [the doctor's] opinion compares to any other physician's opinion or treatment notes in the record"), *adopted*, 2022 WL 5119867 (D. Conn. Oct. 5, 2022).

Here, the ALJ compared Dr. Yormak's and Dr. Xethalis's opinions and reasoned that Dr. Yormak's opinion that Rivas could ***not*** perform postural activities or sit, stand, or walk for more than 60 minutes was inconsistent with Dr. Xethalis's opinion that Rivas could ***frequently*** perform postural activities (and vice versa). (R. 21-22.) The ALJ committed no error in making this comparison and finding each opinion unpersuasive to the extent it was inconsistent with the other. *See Karl E. v. Commissioner of Social Security*, No. 24-CV-113, 2025 WL 3003714, at *6 (W.D.N.Y. Oct. 27, 2025) (ALJ "correctly considered the … record evidence in evaluating the medical opinion evidence" and "reasonably rejected" one medical opinion that found that claimant was mildly limited, and another medical opinion that claimant was markedly limited); *Simpson*, 2024 WL

1300443, at *10-11 (ALJ properly analyzed consistency by comparing medical source opinions to each other and finding certain opinions more persuasive than others); *Gutierrez v. Commissioner of Social Security*, No. 20-CV-10233, 2022 WL 2116718, at *12 (S.D.N.Y. June 13, 2022) ("an ALJ is not required to take the opinion of an opining physician wholesale and can rely on parts of it, as long as the RFC is supported by substantial evidence").

In so doing, the ALJ also cured any issues with the medical source opinions' supportability. By rejecting the more extreme portions of each opinion as inconsistent with the other, the ALJ necessarily determined that those portions of their opinions were not supported by their respective examinations. In the end, the ALJ properly evaluated the medical source opinions by finding persuasive only the portions of each opinion that were supported by the respective examination and consistent with the other opinions and record evidence.

Underneath its technical gloss, the core of Rivas's challenge is that the ALJ should have weighed and evaluated the record evidence differently and should have adopted Dr. Yormak's more restrictive opinion in full. (*See, e.g.*, Pl. Mem. at 12 ("Rivas was harmed by the ALJ's failure to properly explain why he did not accept Dr. Yormak's opinion"); Reply at 3 ("the ALJ has not identified clinical findings in the case record that show why Dr. Yormak's more restrictive limitations should not be adopted").) But this type of review is not within the Court's mandate. The basic question before the Court is whether the ALJ's decision applied the correct legal standards and is supported by substantial evidence. *See Butts*, 388 F.3d at 384. This is a "highly deferential standard of review," *Negron v. Berryhill*, 733 F. App'x 1, 2 (2d Cir. 2018) (summary order), pursuant to which

"a court may not substitute its judgment even where a different result may be justifiable upon a de novo review." *Santiago v. Commissioner of Social Security*, No. 19-CV-2051, 2020 WL 1922363, at *3 (S.D.N.Y. Apr. 21, 2020). In other words, "the ALJ is tasked with the responsibility of reconciling conflicting opinions," *Ingrid T.G.*, 2022 WL 683034, at *8, and, where there is substantial evidence to support the ALJ's decision, the Court must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122 (2d Cir. 2012).

Rivas's other arguments fare no better. He posits that the ALJ's evaluation of Dr. Yormak's opinion referenced only mild findings and not the "more serious positive clinical examination findings," – namely, diminished range of motion, positive straight leg tests, pain, and tenderness – which amounted to "selective and incongruous application of the evidence." (Pl. Mem. at 11.) This is simply wrong. The ALJ accepted the portion of Dr. Yormak's opinion that was consistent with the exact findings that Rivas contends the ALJ overlooked. (*See* R. 21 ("the portion of the opinion limiting the claimant to lifting up to 20 pounds is consistent with other treatment notes that show diminished range of motion, positive straight leg raise tests, and pain and tenderness in the claimant's back and bilateral knees").) Because the ALJ considered Dr. Yormak's opinion against both mild and more serious findings in the record, this is not a case where the ALJ erroneously "cherry-pick[ed] evidence that supports his … determination while ignoring other evidence to the contrary."[9] *Jackson v. Kijakazi*, 588 F. Supp.3d 558, 585 (S.D.N.Y. 2022); *Withus*

[9] To the extent that Rivas's argument is that the ALJ should have mentioned these more serious findings specifically in the context of rejecting Dr. Yormak's postural limitations, this argument also fails. "An ALJ does not have to state on the record every reason justifying a decision and is not required to discuss every single piece of evidence

*v. Saul*, No. 18-CV-10923, 2021 WL 2012270, at *12 (S.D.N.Y. May 19, 2021) (ALJ committed no error when it "reviewed the evidence and provided explanations for why he was accepting certain evidence and rejecting other evidence, including on the grounds that certain opinions were inconsistent with the evidence in the record").

Rivas lastly argues that the sole citation to Dr. Xethalis's examination in the ALJ's consistency analysis of Dr. Yormak's opinion implies that the "opinion is in fact consistent with the majority of evidence in the record" that was not cited. (Reply at 2.) This argument fails because "where 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting *Mongeur,* 722 F.2d at 1040). Here, the ALJ's detailed consistency analysis provides the Court with sufficient information from which to identify additional evidence, even if uncited, against which Dr. Yormak's opinion would also be inconsistent. (*Compare* R. 21-22 (ALJ's decision, noting that Dr. Yormak's opinion was inconsistent with "examination findings that show the claimant to have only mild limitations in range of motion on examination, or that show the claimant to have negative Lasegue's tests, no deficits in muscle strength, reflexes, or sensation, no muscle atrophy, and no need for assistive devices") *with, e.g.*, R. 464 (treatment notes describing a normal sensory exam and reflexes, no atrophy, and no use of assistive devices).) Thus, the ALJ's failure to cite additional record evidence is not

---

submitted," so long as the determination was supported by substantial evidence. *Ryan ex rel. V.D.C. v. Commissioner of Social Security*, No. 21-2947, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022) (summary order) (cleaned up). And further, as here, "what a claimant may label as cherry-picking can often be described more neutrally as weighing evidence." *Tanya R. v. Commissioner of Social Security*, No. 24-CV-375, 2026 WL 111320, at *7 (W.D.N.Y. Jan. 15, 2026).

error. *See Salati v. Saul*, 415 F. Supp.3d 433, 455 (S.D.N.Y. 2019) ("while the ALJ did not always repeat the exact reasons for rejecting or accepting certain opinions, the evidence summarized in the ALJ's decision, as well as the record as a whole, provides a basis for the ALJ to make those determinations"); *Tillman v. Commissioner of Social Security*, No. 13-CV-5053, 2014 WL 7177933, at *11 n.17 (S.D.N.Y. Dec. 17, 2014) (ALJ did not err by not citing every piece of evidence relevant to a decision).

In short, Rivas has not shown that the ALJ's evaluation of the medical source opinions involved legal error or that his findings were not supported by substantial evidence.

**B. The ALJ Erred In Evaluating Rivas's Subjective Symptom Testimony**

In determining disability, the Commissioner must consider all the claimant's symptoms, including subjective symptoms. *See* 20 C.F.R. § 404.1529(a). An ALJ has the "discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Aronis v. Barnhart*, No. 02-CV-7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's evaluation of the claimant's "pain and other symptoms is entitled to substantial deference by a reviewing court." *Argenti v. Commissioner of Social Security*, No. 18-CV-9345, 2020 WL 9815182, at *16 (S.D.N.Y. Feb. 28, 2020).

In evaluating a claimant's subjective description of their symptoms, an ALJ undertakes a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying

> physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (summary order) (reversing and remanding because ALJ failed to correctly apply the two step analysis).

In assessing statements about the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must consider a variety of factors, including: the claimant's daily activities; the "location, duration, frequency, and intensity of pain or other symptoms"; the symptoms' precipitating and aggravating factors; the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms"; other "treatment[s]" or "measures … used to relieve pain or other symptoms"; and "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms."[10] SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) (summary order) (same).

Here, the ALJ recited and applied the correct two-step process in evaluating Plaintiff's subjective complaints. (*See* R. 19-20.) The ALJ found that Rivas's impairments could reasonably be expected to cause his alleged symptoms. (R. 19.) However, the

[10] Rivas argues that the ALJ erred by "fail[ing] to address any of these factors." (Pl. Mem. at 15.) The Second Circuit has ruled that an ALJ is not required to discuss each of these factors, so long as he provides "specific reasons for the finding on credibility." *See, e.g., Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). As explained below, remand is appropriate not because the ALJ did not make explicit mention of any of these factors, but more generally because he failed to provide sufficient reasons for his credibility finding. Of course, on remand, the ALJ should sufficiently address the applicable factors.

ALJ reasoned that Rivas's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with (i) hearing testimony that Rivas "was able to return to work … with no medical improvement" and (ii) "some examinations [that] show only mild physical findings that would not support a finding of disability." (R. 20.) Rivas contends, and the Court agrees, that "[t]hese reasons were insufficient to support the adverse subjective symptoms analysis because they are … not supported by substantial evidence." (Pl. Mem. at 13.)

The ALJ's first conclusion that Rivas returned to work with no medical improvement has no evidentiary basis. Although the ALJ cited "Hearing Testimony" as the basis for this conclusion (R. 20), the Court's review of the hearing transcripts reveals that Rivas never so testified. At the May 2024 hearing – which should be the only hearing considered and credited, as the ALJ agreed that interpretation issues threatened the fairness of the January 2024 hearing (*see* R. 87-88) – Rivas was asked whether "something changed in [his] medical treatment that allowed [him] to go back to work." (R. 50.) Rivas responded "no" and explained that the type and dosage of his medication remained unchanged. (R. 50-51.) Contrary to the Commissioner's argument that this "testimony amply supports the ALJ's reasoning" (Def. Mem. at 11), this testimony is not equivalent, semantically or substantively, to the ALJ's conclusion that Rivas returned to work without medical improvement. A medical condition can improve (or worsen) independent of changes to the treatment of that condition, so Rivas's testimony that his ***treatment*** did not change does not support the ALJ's conclusion that his ***condition*** did not improve. Nor does Rivas's testimony at the January 2024 hearing supply the foundation for the ALJ's conclusion. Beyond the fact that it would be improper for the ALJ

to rely on testimony he agreed was unreliably interpreted, Rivas's testimony at the January hearing was that he ***did*** experience medical improvement prior to returning to work. (*See* R. 76 (Q: "[W]hen you returned to work in February of 2023, had your medical condition improved?" A: "Yes.").)

Thus, by citing "Hearing Testimony" to support his conclusion that Rivas returned to work without medical improvement, the ALJ improperly "mischaracterized … and misstated the evidence," regardless of which hearing he had in mind. *Nieves v. Commissioner of Social Security*, No. 20-CV-8873, 2022 WL 951107, at *10 (S.D.N.Y. Mar. 30, 2022) (remanding where the ALJ cited evidence that did not exist in the record); *see also Ericksson*, 557 F.3d at 83-84 (remanding where the ALJ mischaracterized hearing testimony by attributing false testimony to claimant); *Paulin v. Berryhill*, No. 17-CV-1083, 2017 WL 5663603, at *15 (S.D.N.Y. Nov. 27, 2017) (remanding where the ALJ's "credibility and RFC determinations were based, in part, on a mischaracterization of the hearing testimony"); *Correale-Englehart v. Astrue*, 687 F. Supp.2d 396, 436 (S.D.N.Y. 2010) (remanding where "the ALJ misstated plaintiff's testimony" in discrediting plaintiff's subjective symptoms testimony).

Moreover, as Rivas points out, the ALJ's conclusion that Rivas "returned to work 'without medical improvement'" between the onset of his injuries in August 2021 and his return to work in February 2023 is not supported by the medical evidence of record. (Pl. Mem. at 13-15.) Considering the totality of the record, there are numerous indicia of medical improvement. For example, after displaying antalgic gait at medical examinations in December 2021 and January 2022, Rivas's gait returned to normal in June and July of 2022. (*Compare* R. 471, 477, 481, *with* R. 652, 734.) In the early days

of Rivas's treatment, it was repeatedly noted that he had trouble standing from sitting and maneuvering onto the examination table, but he could do so successfully in June 2022. (*Compare* R. 464, 467, 471, 477, 481, *with* R. 653 ("Can use both arms normally to push up onto exam table").) Rivas had tenderness in his back and knees at every examination until his last, when both of Rivas's knees showed no tenderness. (*Compare* R. 464, 467, 471, 477, 481, *with* R. 735-736.) While Rivas was noted to be fully disabled at examinations between October 2021 and January 2022, his disability was considered only partial in June and July 2022.[11] (*Compare* R. 465, 468, 472, 478, 482, *with* R. 655, 736.) And finally, consistent with all of the above, Dr. Yormak explicitly noted in June 2022 that Rivas's condition was "resolving." (R. 654-655.)

The ALJ erred in failing to engage with, or even mention, this objective evidence of Rivas's medical improvement. *See Evans v. Colvin*, 649 F. App'x 35, 39-40 (2d Cir. 2016) (summary order) (remanding where "the ALJ largely ignored record evidence" in making adverse credibility determination); *Kohler*, 546 F.3d at 269 (remanding where the ALJ "failed to consider relevant probative evidence"); *Ruiz*, 2002 WL 826812, at *6 ("the ALJ committed legal error because he seemingly ignored extensive evidence in the record that supported plaintiff's claim of disability. His decision contains no discussion of this evidence, and thus it is impossible to evaluate the soundness of his decision").

[11] The Court appreciates "that certain findings — including the ultimate finding of whether a claimant is disabled and cannot work — are reserved to the Commissioner, and a treating physician's statement that a claimant is disabled cannot itself be determinative." *Jordan v. Barnhart*, 29 F. App'x 790, 793 (2d Cir. 2002). However, separate from their truth, these statements indicate an improvement in Rivas's condition over time that undermines the ALJ's unsupported conclusion to the contrary.

In sum, by relying on nonexistent testimony to conclude Rivas returned to work without medical improvement and ignoring objective medical evidence to the contrary, the ALJ's first reason for discounting Rivas's subjective symptom testimony was not based on sufficient evidence.

The ALJ's second reason for discrediting Rivas's subjective symptom testimony – "that some examinations show only mild physical findings that would not support a finding of disability" (R. 20) – is vague and unavailing. When an ALJ rejects a claimant's testimony, "he must explain that decision with sufficient specificity to enable the reviewing Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp.2d 250, 280 (S.D.N.Y. 2010) (cleaned up); *see also Pena v. Astrue*, No. 07-CV-11099, 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) ("The Second Circuit has held that where an ALJ rejects witness testimony as not credible, the basis for the finding must be set forth with sufficient specificity to permit intelligible plenary review of the record" (cleaned up)) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)). Without describing or citing what "mild physical findings" were inconsistent with Rivas's subjective complaints, the ALJ failed "to provide a detailed explanation as to what specific evidence in the record contradicts [Rivas's] subjective testimony," which amounts to error. *Callahan v. Berryhill*, No. 17-CV-4920, 2020 WL 7000732, at *20 (E.D.N.Y. Aug. 11, 2020), *adopted*, 2020 WL 6193657 (E.D.N.Y. Oct. 22, 2020); *see also Gonzalez v. Kijakazi*, No. 21-CV-2685, 2022 WL 3330346, at *13 (S.D.N.Y. Aug. 12, 2022) (remanding where "the ALJ did not provide specific citations … to the other medical records showing 'normal' findings that she determined were contrary to [plaintiff's] subjective statements");

*Cintron v. Berryhill*, No. 16-CV-7731, 2018 WL 1229731, at *11 (S.D.N.Y. Mar. 6, 2018) (remanding where adverse credibility finding did not "cite to any specific portions of the record" beyond generalization that the "overall record supports that [plaintiff] has no major neurologic compromise").

Even if the ALJ had cited the specific "mild physical findings" he believed were inconsistent with Rivas's symptoms, this observation would still have been insufficient to support an adverse credibility finding. The mere fact that the record contained some mild findings "do[es] not adequately explain the ALJ's conclusion that [Rivas] exaggerated the severity" of his symptoms. *Lesa M.H. v. Bisignano*, No. 25-CV-2033, 2026 WL 2272752, at *20 (S.D.N.Y. May 1, 2026), *adopted sub nom. Harriott v. Commissioner of Social Security*, 2026 WL 1498976 (S.D.N.Y. May 28, 2026). Indeed, the Social Security Regulations forbid an ALJ from rejecting a claimant's "statements about the intensity and persistence of [his] pain or other symptoms … solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 416.929(c)(2); *accord Ortiz v. Commissioner of Social Security*, 309 F. Supp.3d 189, 200 (S.D.N.Y. 2018) (same). Thus, that the record may have contained some mild physical findings is an insufficient basis standing alone for the ALJ's rejection of Rivas's testimony. *See Ortiz*, 309 F. Supp.3d at 200-01 (ALJ's observation that "clinical findings are largely mild" cannot alone support adverse credibility finding (cleaned up)); *Kane v. Commissioner of Social Security*, No. 22-CV-7005, 2023 WL 6519828, at *10 (S.D.N.Y. July 26, 2023) (remanding where "the ALJ's findings largely consist of recitations of clinical information in the record, which do not on their face contradict Plaintiff's subjective claims of pain" because "[t]o conclude that this clinical information alone contradicted Plaintiff's subjective complaints

would be to make an independent medical conclusion which an ALJ is not permitted to do" (cleaned up)), *adopted*, 2023 WL 6141172 (S.D.N.Y. Sept. 19, 2023).

**C. Remand Is Necessary**

Having determined that the ALJ improperly evaluated Rivas's testimony about his subjective symptoms, the Court now considers whether remand is required. In the credibility context, "[e]ven where the ALJ has committed legal error in his evaluation of the plaintiff's subjective statements, that error may be disregarded as harmless where 'substantial evidence supported the ALJ's overall credibility determination.'" *Davis v. Kijakazi*, No. 21-CV-8485, 2023 WL 5726054, at *10 (S.D.N.Y. Aug. 18, 2023) (quoting *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016)), *adopted*, 2023 WL 5723011 (S.D.N.Y. Sept. 5, 2023). Put differently, "[r]emand is unnecessary … where application of the correct legal standard could lead to only one conclusion." *Zabala*, 595 F.3d at 409 (cleaned up). As discussed above, there is no evidence to support the ALJ's finding that Rivas returned to work without medical improvement. Whether other evidence supports the ALJ's credibility conclusion is beyond the Court's ability to review, given the scant reasoning provided in the decision. *See Schiulaz v. Saul*, No. 19-CV-3364, 2021 WL 429968, at *4 (E.D.N.Y. Feb. 8, 2021) (remanding where "[s]ubstantial evidence may or may not support the decision, but the Court cannot determine whether that is so" because the ALJ's credibility decision lacked appropriate explanation).

With these uncertainties in mind, the Court cannot say that the ultimate outcome would be the same had the ALJ credited Rivas's subjective testimony.[12] Accordingly,

---

[12] By way of example, it does not appear that Rivas's testimony that he could stand for 10-20 minutes and could "walk slowly" with "strong pain" (R. 49-50) is accounted for in

there is no basis to conclude that the ALJ's error was harmless, and remand therefore is appropriate. *See Gonzalez*, 2022 WL 3330346, at *14 ("errors that 'implicate the ALJ's consideration of Plaintiff's subjective complaints prohibit the Court from engaging in a meaningful review of the ALJ's RFC determination' and are 'not harmless'") (quoting *Nichole L.Q. v. Kijakazi*, 20-CV-691, 2022 WL 874398, at *10 (N.D.N.Y. Mar. 24, 2022)).

On remand, the ALJ should reassess and explain with more detail his credibility determination, reassess Rivas's RFC, and complete the remaining disability analysis. That is not to say that the ALJ necessarily should reach a different outcome. But, based on the current record and reasoning, the ALJ's decision cannot stand.

**CONCLUSION**

For the foregoing reasons, pursuant to sentence four of 42 U.S.C. § 405(g), Rivas's motion is GRANTED, the Commissioner's motion is DENIED, and this case shall be remanded for further proceedings consistent with this opinion.

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: September 11, 2026
New York, New York

Copies transmitted this date to all counsel of record.

---

the RFC, which limited Rivas to "light work" that could involve a "good deal" of standing and walking. *See* 20 C.F.R. § 404.1567(b) (defining "light work"). Moreover, had the ALJ determined that a "sedentary" RFC was appropriate, a finding of disability may have been more likely. (*See* R. 55-56 (VE testimony that no good match existed for hypothetical person with Rivas's limitations who required sedentary work).)